








```
JAH     7/2/01     14:17
3:01-CV-01179   BOSA DEVELOPMENT V. SHELL OIL COMPANY
*1*
*CMP.*
```

Robert C. Longstreth (#141714)
**GRAY CARY WARE & FREIDENRICH** LLP
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel: 619-699-4718
Fax: 619-699-2701

Attorneys for Plaintiff
Bosa Development California, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOSA DEVELOPMENT CALIFORNIA, INC., a California Corporation,, <br><br> Plaintiff, <br><br> v. <br><br> SHELL OIL COMPANY, a Delaware Corporation; VIAD CORP, a Delaware Corporation; and GREYHOUND LINES, INC., a Delaware Corporation,, <br><br> Defendants. | CV No. **01 CV 1179 W (CGA)** <br><br> COMPLAINT FOR (1) TRESPASS; (2) NUISANCE; (3) STRICT LIABILITY; (4) NEGLIGENCE; (5) NEGLIGENCE PER SE; (6) EQUITABLE INDEMNITY; (7) UNJUST ENRICHMENT <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Bosa Development California, Inc., alleges as follows:

**PARTIES**

1. Plaintiff Bosa Development California, Inc. is a corporation, organized and existing under the laws of the State of California, having its principal place of business in Burnaby, British Columbia, Canada.

2. Plaintiff is informed and believes and thereon alleges that defendant Shell Oil Company, ("Shell") is a

-1-

1  corporation incorporated under the laws of the State of Delaware,
2  having its principal place of business in Houston, Texas.
3  Plaintiff is informed and believes and thereon alleges that at
4  all relevant times Shell was and is authorized to do business in
5  the State of California, and has done and continues to do
6  business in California and within this district.

7      3.  Plaintiff is informed and believes and thereon
8  alleges that defendant Viad Corp, ("Viad") is a corporation
9  incorporated under the laws of the State of Delaware, having its
10 principal place of business in Phoenix, Arizona. Viad is the
11 successor in interest to Transportation Leasing Company ("TLC").
12 Plaintiff is informed and believes and thereon alleges that at
13 all relevant times Viad was and is, and that TLC was, authorized
14 to do business in the State of California, that Viad and TLC have
15 done business in California and within this district, and that
16 Viad continues to do business in California and within this
17 district. Unless otherwise indicated, further references to Viad
18 will refer to both Viad and TLC.

19     4.  Plaintiff is informed and believes and thereon
20 alleges that defendant Greyhound Lines, Inc., ("Greyhound") is a
21 corporation incorporated under the laws of the State of Delaware,
22 having its principal place of business in Dallas, Texas.
23 Plaintiff is informed and believes and thereon alleges that at
24 all relevant times Greyhound was and is authorized to do business
25 in the State of California, and has done and continues to do
26 business in California and within this district.
27 /////
28 /////

-2-

GRAY CARY WARE
& FREIDENRICH LLP

SD\1453200.1
103649-900100

01 CV ____ (____)

## JURISDICTION AND VENUE

5.  This court has subject matter jurisdiction pursuant to 28 U.S.C. section 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

6.  Venue is proper in this district pursuant to 28 U.S.C. section 1391(a) because this is the district in which a substantial part of the events or omissions giving rise to the claim occurred and because each of the defendants is subject to personal jurisdiction in this district and therefore resides in this district for venue purposes.

## GENERAL ALLEGATIONS

7.  Bosa owns property in the Marina District of downtown San Diego, bounded by Front Street on the west, Island Avenue on the south, First Avenue on the east and Market Street on the north (the "Bosa Property"). Bosa has developed the "Horizons" condominium project on the Bosa Property.

8.  The property immediately to the east of the Bosa Property and across First Avenue, commonly known as 539 First Avenue, San Diego (the "Greyhound site"), was formerly owned and operated by defendant Greyhound, which used the site for the maintenance of Greyhound buses. TLC, predecessor in interest to defendant Viad, also owned and operated the Greyhound site during some or all of the relevant time periods, and Viad has assumed responsibility for remediation of soils and groundwater at the Greyhound site.

9.  Defendants Greyhound and Viad installed and operated five underground storage tanks at the Greyhound site.

-3-

Two 10,000 gallon steel fuel tanks were installed in 1953, and held leaded gasoline until 1967, No. 1-D diesel fuel from 1967 to 1973, and No. 2-D diesel fuel from 1974 though 1989. A 550 gallon steel tank held waste oil from 1954 through the mid-1970s, and another 550 gallon steel tank held waste oil from the mid-1970s through 1989. An 8,000 gallon steel tank held lubricant oil from 1974 through 1989.

10. The gasoline/diesel and waste oil tanks installed in 1953 did not have secondary containment, nor were they equipped with cathodic protection. The tanks were removed in 1989.

11. On May 19, 1989, the California Regional Water Quality Control Board, San Diego Region ("RWQCB") issued Cleanup and Abatement Order No. 89-49 to Greyhound Lines, Inc. The Order finds that petroleum hydrocarbons have been discharged from the Greyhound site to the environment, and finds further that:

> Greyhound has demonstrated negligence in the discharge of petroleum hydrocarbons to the environment as follows:
>
> a. Single-walled steel tank construction which is subject to corrosion,
>
> b. No cathodic protective coating of the tanks,
>
> c. No early warning site monitoring to detect any discharges,
>
> d. No tank over-spill protection, and
>
> e. The lack of thorough and adequate tank tests, given the age (36 years old) of the steel tanks.

12. On February 20, 1990, the RWQCB amended Cleanup and Abatement Order No. 89-49 so that its obligations and

/////

-4-

directives apply to defendant Viad as well as to defendant Greyhound.

13.  Defendant Shell operated a gasoline service station on a site northeast of the Bosa Property commonly known as 148 Market Street, San Diego (the "Shell site"). Shell installed and maintained six underground petroleum storage tanks at the Shell site.

14.  On May 19, 1989, the California Regional Water Quality Control Board, San Diego Region ("RWQCB") issued Cleanup and Abatement Order No. 89-48 to Shell Oil Company and to the owner of the Shell site. The Order finds that petroleum hydrocarbons have been discharged from the Shell site to the environment, and finds further that:

> Shell has demonstrated negligence in the discharge of petroleum hydrocarbons to the environment as follows:
>
> a. Single-walled steel tank construction which is subject to corrosion,
>
> b. No cathodic protective coating of the tanks,
>
> c. No early warning site monitoring to detect any discharges,
>
> d. No tank over-spill protection, and
>
> e. The lack of thorough and adequate tank tests, given the age (29 years old) of the steel tanks.

15.  The RWQCB's Orders find that the discharge of petroleum hydrocarbons from the Shell and the Greyhound sites have constituted a continuing public nuisance and constitute violations of the California Health and Safety Code and the California Water Code.

16.  No source of petroleum hydrocarbon contamination ever been identified on the Bosa Property. Similarly, no source

-5-

1  of petroleum hydrocarbon contamination has ever been identified
2  on the property located immediately to the north of the Bosa
3  Property, between Front Street on the west and First Avenue on
4  the east and on the north side of Market Street, which is
5  referred to at times as the former Superplating, Incorporated
6  site (the "Superplating site").

7      17.  On May 13, 1991, the RWQCB issued Cleanup and
8  Abatement Order No. 91-45 to defendants Shell, Greyhound and
9  Viad, as well as several others.  The Order finds that the
10 hydrocarbon contamination to which the defendants contributed
11 "has an areal extent which covers all or portions of six city
12 blocks," an area that includes the Bosa Property.  This Order
13 remains in effect.

14     18.  On August 25, 1999, the RWQCB issued an order
15 rescinding a Cleanup and Abatement Order that had been issued for
16 the Superplating site, concluding that pollution caused by metal
17 plating waste at the site had been adequately remediated.  In a
18 determination issued on October 7, 1999, the RWQCB repeated its
19 conclusion that petroleum hydrocarbon contamination at the
20 Superplating site was caused by discharges from the sites
21 described in Cleanup and Abatement Order No. 91-45, including the
22 Shell and Greyhound sites, and stated that the dischargers
23 identified in that Order, including each of the defendants,
24 remain responsible for abatement of the petroleum hydrocarbon
25 waste described in the Order.

26     19.  In February 1999, Bosa purchased the Bosa
27 Property.  In March and April 1999, Bosa notified defendants that
28 investigation by Bosa's consultants had determined that gasoline

1  and diesel fuel migrating from the Shell and Greyhound sites had
2  contaminated approximately 9,000 cubic yards of soil on the Bosa
3  Property. Bosa noted that diesel fuel and gasoline contamination
4  was found on both the Bosa Property and the Greyhound site at the
5  same depths below ground, that the contamination found at the
6  Bosa property was immediately adjacent to where the diesel fuel
7  and gasoline tanks had been located at the Greyhound site, and
8  that Viad and Greyhound's own consultants had documented the
9  spread of contamination from the Greyhound site across First
10 Avenue to the Bosa property. Bosa requested that defendants
11 remove and dispose of the contaminated soil on the Bosa Property,
12 or commit to fund the removal by Bosa of the contaminated soil.

13         20.  Defendant Shell did not respond substantively to
14 Bosa's notification and request regarding the diesel fuel and
15 gasoline contamination. Defendant Viad initially responded by
16 denying that it was the source of diesel fuel or gasoline
17 contamination on the Bosa Property, and then by saying that
18 defendant Greyhound rather than defendant Viad was responsible
19 for dealing with the matter under an agreement between Viad and
20 Greyhound. Greyhound responded that defendant Viad rather than
21 defendant Greyhound is the responsible party.

22         21.  After defendants failed to address the
23 contamination, Bosa excavated, removed, treated and disposed of
24 the contaminated soil under the supervision of the County of San
25 Diego Department of Environmental Health. Bosa incurred expenses
26 of $585,077.40 to remediate the contaminated soil.
27 /////
28 /////

-7-

22. On August 22, 2000, Bosa requested that defendants reimburse it for the $585,077.40 spent to remediate the property. Defendants have refused to reimburse Bosa for this amount.

### FIRST CLAIM FOR RELIEF

**(Damages for Trespass Against All Defendants)**

23. Bosa realleges and incorporates by reference the allegations of paragraphs 1 through 22, as though fully set forth herein.

24. Defendants, and each of them, used, stored and released petroleum hydrocarbons and other hazardous substances in such a manner as to cause such materials to enter into and contaminate the soil and groundwater at the Bosa Property without Bosa's consent and against its will.

25. As a direct and proximate result of defendants' conduct, Bosa suffered damage to the Bosa Property as alleged, requiring remediation, abatement and mitigation by removal of the contaminants.

26. Defendants, and each of them, have acted intentionally, with a willful and conscious disregard of the consequences to Bosa and of Bosa's rights, thereby constituting oppression, fraud or malice and justifying punitive and exemplary damages in an amount to be determined by proof at trial, sufficient to punish and set an example of defendants. Defendants' actions were performed by, authorized by, and/or ratified by their officers, directors and managing agents.

/////
/////
/////

## SECOND CLAIM FOR RELIEF

**(Damages for Nuisance Against All Defendants)**

27. Bosa realleges and incorporates by reference the allegations of paragraphs 1 through 26, as though fully set forth herein.

28. Defendants, and each of them, used, stored and released petroleum hydrocarbons and other hazardous substances in such a manner as to cause, create, or assist in creating a nuisance within the meaning of Section 3479 of the California Civil Code, in that such use, storage and release into the soil and groundwater was injurious to Bosa's comfort, free use and enjoyment of the Bosa Property.

29. Defendants, and each of them, in failing to remediate the contamination migrating from the Shell and Greyhound properties to the Bosa Property caused and maintained a nuisance, or assisted in causing and maintaining a nuisance within the meaning of section 3479 of the California Civil Code, in that the release and migration of the contaminants interfered with Bosa's comfort, free use and enjoyment of the Bosa Property.

30. As a direct and proximate result of defendants' conduct, Bosa suffered damage to the Bosa Property as alleged, requiring remediation, abatement and mitigation by removal of the contaminants.

31. Defendants, and each of them, have acted intentionally, with a willful and conscious disregard of the consequences to Bosa and of Bosa's rights, thereby constituting oppression, fraud or malice and justifying punitive and exemplary damages in an amount to be determined by proof at trial,

-9-

sufficient to punish and set an example of defendants. Defendants' actions were performed by, authorized by, and/or ratified by their officers, directors and managing agents.

### THIRD CLAIM FOR RELIEF

### (Damages for Strict Liability Against All Defendants)

32. Bosa realleges and incorporates by reference the allegations of paragraphs 1 through 31, as though fully set forth herein.

33. Bosa is informed and believes, and thereon alleges that defendants' use and storage of petroleum hydrocarbons and other hazardous substances involved a substantial risk of contamination to the soil and groundwater at the Shell and Greyhound sites and at neighboring sites such as the Bosa Property.

34. Bosa is informed and believes, and thereon alleges, that at all relevant times the risk of soil and groundwater contamination was a serious risk with a high degree of harm, since, among other things, contamination of soil and groundwater can render property unsafe for use, pollute neighboring lands, necessitate costly remediation efforts and seriously diminish the value of property, all to the damage of Bosa and other neighboring property owners, as well as the owners of the Shell and Greyhound sites themselves.

35. Bosa is informed and believes, and thereon alleges, that the risk of soil and groundwater contamination from defendants' activities at the Shell and Greyhound sites cannot be eliminated by the exercise of due care by defendants.

/////

-10-

36. Bosa is informed and believes, and thereon alleges, that defendants' use and storage of petroleum hydrocarbons and other hazardous materials at the Shell and Greyhound sites was not a matter of common usage in part because of the aforementioned risk of serious harm.

37. Bosa is informed and believes, and thereon alleges, that defendants' use and storage of petroleum hydrocarbons and other hazardous materials at the Shell and Greyhound sites did not involve sufficient value to the community to outweigh the dangerousness of conducting that activity in the area in which defendants chose to conduct it.

38. Bosa is informed and believes, and thereon alleges, that defendants' use and storage of petroleum hydrocarbons and other hazardous materials at the Shell and Greyhound sites constituted an ultra-hazardous activity which presented a serious risk of contaminating soil and groundwater and causing the damage to the Bosa Property alleged herein.

39. Despite the inherent risk presented by their activities, defendants, and each of them, have failed to act with due regard to the safety of the public health and the environment, but have instead acted intentionally, with a willful and conscious disregard of the consequences to Bosa and of Bosa's rights, thereby constituting oppression, fraud or malice and justifying punitive and exemplary damages in an amount to be determined by proof at trial, sufficient to punish and set an example of defendants. Defendants' actions were performed by, authorized by, and/or ratified by their officers, directors and managing agents.

-11-

## FOURTH CLAIM FOR RELIEF

### (Damages for Negligence Against All Defendants)

40. Bosa realleges and incorporates by reference the allegations of paragraphs 1 through 39, as though fully set forth herein.

41. Defendants owed Bosa a duty not to negligently use, store or release any substances at the Shell and Greyhound sites that would damage the Bosa Property.

42. Defendants breached the duty they owed to Bosa by using, storing and releasing petroleum hydrocarbons and other hazardous substances at the property in a negligent manner, causing them to migrate to and contaminate soil and groundwater on the Bosa Property.

43. As detailed above, the RWQCB has expressly found that defendants, and each of them, have acted negligently in allowing petroleum hydrocarbons to be released to the environment and to contaminate soil and groundwater.

44. As a direct and proximate result of defendants' negligent conduct, Bosa suffered damage to the Bosa Property as alleged, requiring remediation, abatement and mitigation by removal of the contaminants.

45. Defendants, and each of them, have acted intentionally, with a willful and conscious disregard of the consequences to Bosa and of Bosa's rights, thereby constituting oppression, fraud or malice and justifying punitive and exemplary damages in an amount to be determined by proof at trial, sufficient to punish and set an example of defendants.

/////

-12-

Defendants' actions were performed by, authorized by, and/or ratified by their officers, directors and managing agents.

### FIFTH CLAIM FOR RELIEF

**(Damages for Negligence Per Se Against All Defendants)**

46. Bosa realleges and incorporates by reference the allegations of paragraphs 1 through 45, as though fully set forth herein.

47. Defendants' activities and omissions constituted negligence per se in that they violated various federal and state statutes, including but not limited to, California Health and Safety Code sections 5411 and 25280 et seq., California Water Code sections 13260 and 13304(a) and 42 U.S.C. sections 6901 et seq. The RWQCB has expressly determined that defendants, and each of them, have violated California statutes with respect to their use, storage and release of petroleum hydrocarbons at the site.

48. Bosa is among the class of persons and entities who are protected by the aforementioned statutes, and which are and have been affected by the activities of the defendants, and each of them, in violating these statutes.

49. As a direct and proximate result of defendants' conduct, Bosa suffered damage to the Bosa Property as alleged, requiring remediation, abatement and mitigation by removal of the contaminants.

50. Defendants, and each of them, have acted intentionally, with a willful and conscious disregard of the consequences to Bosa and of Bosa's rights, thereby constituting oppression, fraud or malice and justifying punitive and exemplary

-13-

1 damages in an amount to be determined by proof at trial,
2 sufficient to punish and set an example of defendants.
3 Defendants' actions were performed by, authorized by, and/or
4 ratified by their officers, directors and managing agents.

### SIXTH CLAIM FOR RELIEF

**(Equitable Indemnity Against All Defendants)**

51. Bosa realleges and incorporates by reference the allegations of paragraphs 1 through 50, as though fully set forth herein.

52. As a result of defendants' acts and omissions as set forth above, Bosa has been obligated to incur the cost of remediating, abating and mitigating the contamination that migrated to the Bosa Property from the Shell and Greyhound sites.

53. The obligation to pay such costs should ultimately rest with the defendants, as the parties responsible for the release and migration of the hazardous substances requiring remediation, abatement and mitigation.

54. By reason of the foregoing, Bosa is entitled to equitable indemnity from the defendants, and each of them, for the expenses and costs incurred by Bosa as a result of the release and migration of hazardous substances from the Shell and Greyhound sites to the Bosa Property.

### SEVENTH CLAIM FOR RELIEF

**(Damages for Unjust Enrichment Against All Defendants)**

55. Bosa realleges and incorporates by reference the allegations of paragraphs 1 through 54, as though fully set forth herein.

/////

56. As set forth above, defendants, and each of them are obligated under Cleanup and Abatement Orders Nos. 89-49, 89-49 and 91-45, as well as under California and federal law, to remediate, abate and mitigate the hydrocarbon contamination described in those orders.

57. Despite their obligation to remediate, abate and mitigate the petroleum hydrocarbon contamination on the Bosa Property, and Bosa's request that defendants comply with their obligations in this regard, defendants failed and refused to do so.

58. As a result of defendants' failure to comply with their obligation to remediate, abate and mitigate the contamination migrating from the Shell and Greyhound sites to the Bosa Property, Bosa was required to incur the cost of such remediation, abatement and mitigation, as set forth above.

59. Because Bosa incurred expenses that were properly the responsibility of the defendants, defendants have been unjustly enriched in the amount of the $585,077.40 that Bosa has incurred, and Bosa is entitled to recover this amount from the defendants.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays that judgment be entered against each of the defendants, jointly and severally:

1. For compensatory damages of $585,077.40;
2. For punitive and exemplary damage, according to proof;
3. For costs of suit;
4. For reasonable attorneys' fees;

/////

-15-

5.  For both prejudgment and post-judgment interest as permitted by law;

6.  For such other and further relief as the court considers proper.

Dated:  June 29, 2001

GRAY CARY WARE & FREIDENRICH LLP

By /s/ Robert C. Longstreth
ROBERT C. LONGSTRETH
Attorneys for Plaintiff
Bosa Development California, Inc.

**ORIGINAL**

JS44
(Rev 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**
BOSA DEVELOPMENT CALIFORNIA, INC., a California corporation

**DEFENDANTS**   '01 CV 1179 W (CGA)
SHELL OIL COMPANY
VIAD CORP.
GREYHOUND LINES, INC.

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** All claims arose in San Diego County
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Robert C. Longstreth (#141714)
Grey Cary Ware & Freidenrich, LLP
401 B Street, Suite 1700
San Diego, CA 92101

**ATTORNEYS (IF KNOWN)**

**II. BASIS OF JURISDICTION** (PLACE AN x IN ONE BOX ONLY)
- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only)

|   | PT | DEF |   | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☒4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☒5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. CAUSE OF ACTION** (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).
28 U.S.C. Section 1332, claims for trespass, residence, strict liability, negligence, negligence per se, equitable indemnity and unjust enrichment.

28:1332 TL

**V. NATURE OF SUIT** (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| | PERSONAL INJURY | PERSONAL INJURY | | | |
| ☐ 110 Insurance | ☐ 310 Airplane | ☐ 362 Personal Injury- Medical Malpractice | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 315 Airplane Product Liability | | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 330 Federal Employers' Liability | | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce ICC Rates etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 RR & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | PERSONAL PROPERTY | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| | | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | ☐ 862 Black Lung (923) | |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC |
| ☐ 160 Stockholders Suits | | | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | | |
| ☒ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prisoner Conditions | | | |

**VI. ORIGIN** (PLACE AN X IN ONE BOX ONLY)
- ☒ 1 Original Proceeding
- ☐ 2 Removal from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23
DEMAND $ 585,077.40 plus prejudgment interest and punitive damages
Check YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See Instructions): NO   JUDGE   Docket Number

DATE 6-29-01   SIGNATURE OF ATTORNEY OF RECORD /s/ Robert C. Longstreth

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

**ORIGINAL**



CB #150 72705   06/29/01